## J. N. DE FREECE v. STATE.

No. A-1663. Opinion Filed June 30, 1913.

(133 Pac. 254.)

INTOXICATING LIQUORS—Illegal Sale—Evidence. See the opinion for evidence held insufficient to sustain a verdict and judgment of conviction for the unlawful sale of intoxicating liquor.

(Syllabus by the Court.)

*Appeal from County Court, Love County.*
*R. A. Keller, Judge.*

J. N. De Freece was convicted of violation of the prohibitory law, and brings error. Reversed.

*Eddleman & Graham,* for plaintiff in error.
*C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J. This appeal was prosecuted from a conviction had in the county court of Love county on the 20th day of January, 1912, in which, in accordance with the verdict of the jury, the defendant was sentenced to be confined in the county jail for 30 days and pay a fine of $50. The only question presented is whether the judgment of conviction is supported by the evidence.

The only witness for the state was Geo. S. Newell, who testified as follows:

"I live six miles east of Orr, near Simon; have known the defendant 10 years; he has been my family physician in years past. I was in his drug store at Orr, on or about

October 23d and bought 15 cents worth of medicine, and said to him, 'I would love to have a P. T.' He walked back in the back of the drug store then—and I walked back there, and picked up a package, and walked out. I don't think he said anything at all; he was busy there; I do not know what he said. The package was a pint of whisky. I went back to the drug store, and put $1.15 down on the counter. I think Bob Cartright picked it up. The defendant was not present when I paid the money."

On cross-examination he said he brought cotton to the gin, and that Mr. Greenway went to Orr with him; that on his way home he went by Mr. Greenway's, and found Sheriff Al J. Davis there; that in going to town that morning he had been drinking.

On behalf of the defendant, Mr. Greenway testified that he went to town with Mr. Newell on a load of cotton; Mr. Newell laying down, and witness driving; that Mr. Newell was sick and throwing up, and his breath smelled like mean whisky to him; that he drove the wagon to Palmer's Gin and got off and left him there; that Mr. Newell was drunk when he got back to witness' house that evening.

On cross-examination he said he was born in North Carolina, lived in Texas, had never been convicted of a crime; that he drove Newell's wagon back with the cotton seed in it, and Newell returned in Less Harrington's wagon; that when witness got ready to start home Newell had not sobered up, he still staggered; that this was the only time he went with him to town.

Henry Power testified that he was acquainted with the prosecuting witness, Newell, and met him near Mr. Greenway's the day Mr. Greenway went with him to town; that Newell had cotton in the wagon, and seemed like he was drinking. He had a bottle of whisky two-thirds full, and asked witness to take a drink; that he then went on in the direction of Mr. Greenway's house.

Will Hodges testified that he was acquainted with the

prosecuting witness, Newell, for about three years; that "on the day in question I met him in Orr and took him to be intoxicated; he had a bottle of whisky and offered me a drink, and I told him that I did not want any, that he had better be careful or he would get it taken away from him, and Newell said: 'I will put this in Dr. De Freece's store.' When I met Newell he was coming from Palmer's Gin, and when he left me he went toward the defendant's drug store."

The defendant took the stand, and testified that he is a physician and pharmaceutist with a drug store in the town of Orr; and swore positively that he had never been engaged in the sale of whisky; that he never did, at any time, furnish or sell intoxicating liquor to the prosecuting witness or any other person; that he had been engaged in the drug business about six years, a part of the time at Fletcher, Okla.

On cross-examination he was asked:

"Q. Can you account for Geo. Newell coming here and testifying as he has against you that he got this bottle of whisky from you that day? A. I don't know why he did it; I guess that he thought that would clear him from the transaction. Q. You think that would make Geo. Newell lie? A. I don't know."

There was no effort made to impeach any of the witnesses for the defendant, all of whom seem to be creditable men; and, on the part of the only witness for the state, we have the fact that he himself testifies to having drank whisky on his way to town that day; and we must take this into consideration in determining how far we shall credit his statement that the defendant had permitted him to take a pint of whisky from his drug store, as against the strong defense which was presented by the defendant, not only supporting his denial of having delivered the pint of whisky to the prosecuting witness, but showing that said witness was intoxicated, and in possession of a bottle of whisky before he went to the defendant's drug store.

While the cases are very rare in which this court inter-

feres to disturb the judgment of the trial court, and it is only in a case where the verdict is clearly contrary to the evidence, or when from the doubtful character of the evidence against the defendant the preponderance in his favor is such that it is evident that the jury were influenced by passion or prejudice, that a judgment will be reversed because the evidence is insufficient to sustain it, in this case, we think that the evidence, unless we are to discredit entirely the testimony of unimpeached witnesses, falls within the rule laid down by these cases, and that a new trial should be granted. The judgment is therefore reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.